1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13 ALFRED A. RICO, | 1:06-CV-01287 AWI SMS HC |
| 14                Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF |
| 15   v. | HABEAS CORPUS |
| 16 | |
| 17 K. MENDOZA-POWERS, Warden, | |
|             Respondents. | |
| 18 _____/ | |

19

20
    Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  Petitioner is represented in this action by Rich Pfeiffer, Esq.

21

22
**BACKGROUND**[1]

    Petitioner is currently in the custody of the California Department of Corrections pursuant

23
to a judgment of the Superior Court of California, County of Sacramento, following his

24
conviction by jury trial on July 24, 1991, of murder in the second degree in violation of Cal.

25
Penal Code § 187. See Exhibit 1, Answer.  Petitioner was sentenced to a total indeterminate term

26
of 15 years to life with the possibility of parole. Id.

27

28
   [1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, and the exhibits lodged with Respondent's answer.

1    On July 6, 2005, a parole suitability hearing was held by the California Board of Parole

2 Hearings ("BPH") at Avenal State Prison. See Exhibit 2, Answer. Petitioner attended the hearing

3 and was represented by his attorney, Leon Harris III. Id. At the conclusion of the hearing, the

4 BPH denied parole and deferred rehearing for two years. Id.

5    On March 5, 2006, Petitioner filed a petition for writ of habeas corpus in the Sacramento

6 County Superior Court challenging the BPH's decision. See Exhibit 4, Answer. In a reasoned

7 decision, on March 30, 2006, the petition was denied. Id.

8    On April 12, 2006, Petitioner filed a petition for writ of habeas corpus in the California

9 Court of Appeals, Third Appellate District. See Exhibit 5, Answer. On April 27, 2006, the

10 petition was summarily denied. Id.

11    On May 8, 2006, Petitioner filed a petition for writ of habeas corpus in the California

12 Supreme Court. See Exhibit 6, Answer. On June 28, 2006, the California Supreme Court

13 summarily denied the petition. Id.

14    On September 19, 2006, Petitioner filed the instant petition for writ of habeas corpus in

15 this Court. The petition for writ of habeas corpus does not challenge the underlying conviction;

16 rather, it challenges the July 6, 2005, decision of the California Board of Parole Hearings denying

17 parole. Petitioner claims the BPH decision is arbitrary, capricious and not supported by the

18 record, thereby violating his constitutional rights. He further argues his equal protection rights

19 and the constitutional proscription against cruel and unusual punishment were violated because

20 Petitioner's co-defendants received only three and two years sentences compared to Petitioner's

21 own lengthy indeterminate term of incarceration.

22    On February 26, 2007, Respondent filed an answer to the petition. Petitioner did not file a

23 traverse.

24

25

26                                                2

27

28

**FACTUAL BACKGROUND**[2]

[Co-defendant Gonzales], co-defendant Hart, and [Petitioner] had gone to the victim's home after she had called Gonzales. She had told them that her car had been stolen and she knew where it was. Reportedly, they located the victim's car, but could not get it started. They then went to a McDonald's restaurant to purchase some food. Gonzales indicated that they returned to the victim's residence where they made a telephone call and discovered his wife had thrown his clothes outside of their residence. Reportedly, he became upset and went walking. He was picked up a short time later by Hart, who was driving his vehicle with [Petitioner], and the victim. Gonzales stated he then began driving the car with the victim in the front seat next to him. As soon as he started driving, [Petitioner] shot the victim. Gonzales stated he did not see the shot, but when he looked up, [Petitioner] had the gun in his hand and said, "It had to be done, I didn't want her to hurt you anymore." According to Gonzales, the shooting occurred on Broadway near a retirement home. He stated that after the shooting, [Petitioner] was holding the victim's hair to keep her from slumping over. He stated they then drove to a Ross store near the Sunrise Mall where he purchased five or six shirts, sweaters, a pair of black pants, and some socks. They then drove to the Motel Six where they were stopped by the officer.

See Exhibit 3, Answer.

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction,

---

[2]This summary of the conviction offense is taken from the statement of Petitioner's co-defendant found in the Life Prisoner Evaluation statement compiled at Avenal State Prison in January of 2005. See Exhibit 3, Answer.

1   28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

2   threshold requirement of being in custody pursuant to a state court judgment. <u>Sass v. California</u>

3   <u>Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v. Lambert</u>, 370

4   F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

5   state prisoner in custody pursuant to a state court judgment, even when the petition is not

6   challenging his underlying state court conviction.'").

7       The instant petition is reviewed under the provisions of the Antiterrorism and Effective

8   Death  Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S.

9   63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless

10  the adjudication of the claim "resulted in a decision that was contrary to, or involved an

11  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

12  of the United States" or "resulted in a decision that was based on an unreasonable determination

13  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

14  § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

15      As a threshold matter, this Court must "first decide what constitutes 'clearly established

16  Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71,

17  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

18  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

19  of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other

20  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

21  principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id.</u>

22      Finally, this Court must consider whether the state court's decision was "contrary to, or

23  involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at

24  72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

25  grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

26                                              4

27

28

1   Court on a question of law or if the state court decides a case differently than [the] Court has on a

2   set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

3   at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

4   state court identifies the correct governing legal principle from [the] Court's decisions but

5   unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

6   413.

7        "[A] federal court may not issue the writ simply because the court concludes in its

8   independent judgment that the relevant state court decision applied clearly established federal

9   law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

10  A federal habeas court making the "unreasonable application" inquiry should ask whether the

11  state court's application of clearly established federal law was "objectively unreasonable." Id. at

12  409.

13       Petitioner has the burden of establishing that the decision of the state court is contrary to

14  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

15  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

16  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

17  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

18  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

19       AEDPA requires that we give considerable deference to state court decisions. The state

20  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

21  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied,

22  537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

23  II.    Review of Claims

24       A parole release determination is not subject to all of the due process protections of an

25  adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

26                                     5

27

28

1   also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)

2   (explaining that due process is flexible and calls for procedural protections that particular

3   situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,

4   the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,

5   even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of

6   Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process

7   to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing,

8   Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"

9   Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he

10  falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by

11  "some evidence" having an indicia of reliability, Superintendent, Mass. Correc. Inst. v. Hill, 472

12  U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

13       "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not

14  comport with 'the minimum requirements of procedural due process,' unless the findings of the

15  prison disciplinary board are supported by some evidence in the record.'  472 U.S. 445, 454

16  (1985), quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In

17  determining whether the "some evidence" standard is met, the Court need not examine the entire

18  record, independently assess the credibility of witnesses, or re-weigh the evidence.  Id.  Rather,

19  the Court must determine whether there is any evidence in the record that could support the

20  conclusion of the disciplinary board.  Id., citing Superintendent v. Hill, at 455-56.  Although Hill

21  involved the accumulation of good time credits, the same standard applies to parole, as both

22  situations "directly affect the duration of the prison term."  Id., citing Jancsek v. Oregon Bd. of

23  Parole, 833 F.2d at 1390.

24       With regard to the procedural protections outlined in Greenholtz, as Respondent submits,

25  Petitioner was provided all that is required.  Petitioner was provided with advance notice of the

26                                        6

27

28

1   hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be

2   heard during the hearing, and a written decision explaining the reasons that parole was denied.

3          Petitioner, however, contends the BPH's decision was not supported by the evidence. A

4   review of Petitioner's parole hearing reveals that the state court decision finding the BPH's

5   decision to be supported by some evidence was not unreasonable. The superior court noted the

6   BPH found that the murder "was carried out in an dispassionate, execution-style manner, with a

7   callous disregard for human suffering. See Cal. Code Regs., tit. 15, §§ 2402(c)(1)(B),

8   2402(c)(1)(D).[3] The finding that the murder was dispassionate and execution-style is supported

9   by the fact that Petitioner coldly discharged his weapon into the back of the victim's head

10  without provocation while the victim was seated in front of him in a vehicle. See Exhibit 2 at p.

11  73, Exhibit 3 at pp. 2-3.  The finding of callous disregard for human suffering is supported by the

12  evidence that the victim made gurgling noises after she had been shot, yet the men did not stop to

13  seek assistance for her. See Exhibit 3 at p. 6.

14         The state court next noted that the BPH found Petitioner needed to complete a vocational

15  training program. The court acknowledged that this factor is not listed as a factor showing

16  unsuitability in 15 C.C.R. § 2402(c)(1); however, the court found the BPH properly considered

17  the evidence because the list is not exclusive and the evidence was relevant to the determination.

18  The court's determination is not unreasonable. While § 2402(c) lists circumstances tending to

19

20         [3]Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances
    tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous,
21  atrocious or cruel manner.  The factors to be considered include:
            (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
22          (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-
            style murder.
23          (C) The victim was abused, defiled or mutilated during or after the offense.
            (D) The offense was carried out in a manner which demonstrates an exceptionally callous
24          disregard for human suffering.
            (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
25
    15 Cal.Code Regs. § 2402(c)(1)(A)-(E).
26                                              7

27

28

1  show unsuitability, 15 C.C.R. § 2402(b) states that "[a]ll relevant, reliable information available

2  to the panel shall be considered in determining suitability for parole."  Thus, it was not improper

3  for the BPH to consider this evidence in its determination.

4          In light of the above, it is clear there was some evidence supporting the BPT finding of

5  unsuitability, and it cannot be said that the state court resolution of Petitioner's claims "resulted

6  in a decision that was contrary to, or involved an unreasonable application of, clearly established

7  Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision

8  that was based on an unreasonable determination of the facts in light of the evidence presented in

9  the State Court proceeding." 28 U.S.C. § 2254(d).

10         Likewise, Petitioner's claim that his sentence violates his equal protection rights and the

11  constitutional prohibition against cruel and unusual punishment must be rejected. Petitioner

12  complains that his co-defendants received short sentences of two and three years while he

13  received a lengthy indeterminate sentence. This claim is not cognizable as Petitioner seeks to

14  challenge the underlying sentence. If Petitioner wishes to raise this claim, he should do so by way

15  of a separate petition challenging the underlying conviction and sentence. In any case, as

16  Petitioner himself admits, the Constitution permits qualitative differences in meting out

17  punishments and there is no requirement that two persons convicted of the same offense receive

18  identical sentences. See Petition at p. 19, *citing* Williams v. Illinois, 399 U.S. 235, 243 (1970).

19                                    **RECOMMENDATION**

20         Based on the foregoing, it is HEREBY RECOMMENDED that:

21         1.      The petition for writ of habeas corpus be DENIED; and

22         2.      Judgment be entered in favor of Respondent.

23         This Findings and Recommendations is submitted to the assigned United States District

24  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

25  the Local Rules of Practice for the United States District Court, Eastern District of California.

26                                            8

27

28

1    Within thirty (30) days after being served with a copy, any party may file written objections with

2    the court and serve a copy on all parties.  Such a document should be captioned "Objections to

3    Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

4    and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

5    objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

6    636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

7    may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

8    Cir. 1991).

9

10   IT IS SO ORDERED.

11   **Dated:    July 26, 2007**                              /s/ Sandra M. Snyder
                                              UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                          9

27

28